The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good afternoon. First call, or next call, 4-22-0475 in the State of Cacioppoli, Jessica Wilson, Appellant in OSF Healthcare Systems, pardon me, at all appellees. Counsel, would you please state your name for the record for the appellant? Yes, sir. My name is Cynthia Caroll. And for the appellee, Mr. Drinkwine. Chris Drinkwine on behalf of Dr. Prabhakar. And Eileen Caver on behalf of OSF Healthcare Systems. Thank you. You may proceed. Good morning, Your Honor. Cynthia Caroll. I appreciate your time today, counsel, and appreciate the effort put into the review of this case. I come here on behalf of Jessica Wilson, who is the executor of the estate of Matthew Cacioppi. She was appointed the executor in 2016. She remains the executor to date. At no point in time have her duties changed. She has filed her annual report. She is still in the office of executor. This case came before Judge Lisa Fabiano in the probate court. It will also be known that Judge Fabiano ended up representing, Judge Fabiano came back to probate court and picked this case up for a second time. So she had been in the case and then was out. When Jessica Wilson came before the court, she came before the probate court, she had a affidavit of heirship and her motion to be appointed as the executor. Both of those documents, one indicated that she was a spouse in the affidavit of heirship, and the other indicated that she had been married in a civil proceeding to Matthew Cacioppi. Those statements are not correct. At the time that these documents were placed before Judge Fabiano, she immediately asked Miss Wilson to provide further explanation. She provided explanation that she was married to Matthew Cacioppi and a bedside ceremony, and that he was at the hospital and he was passing away. She was married to him in the civil ceremony. To her, she believed that this was, that the marriage, she understood that the marriage required a certificate to be filed. And so she knew at that time that she was not married to Mr. Cacioppi. Um, Judge Fabiano asked her about this. She put her under oath. At that time, Judge Fabiano was told under oath exactly how the circumstances had occurred. There was no misrepresentation by Miss Wilson. She stated exactly what had happened and that she did not have a certificate. Judge Fabiano accepted this testimony, and then she amended the pleadings and had Jessica signed those as well. At the end of the proceeding, the documents and the only order that Judge Fabiano signed were sent to the clerk. She also told Miss Wilson that if she obtained the documents, she could come in at a later date. And become the, and would be changed. But she was still the executor. The court should note that this, that the document that was signed, the amended and written document, I shouldn't say amended because it was the only one, is the document that is, was in place for years and at no time until the last day when the court had heard the case, did the defendant agree that they had proceeded through this entire process on the documents filed and had not proceeded on the actual order. They had indicated that Miss Wilson lied to the court and they based that on the two pleadings. They excluded and did not address the actual orders that had been amended. Neither did the trial court. Although it was discussed on the last day. The case went on where there was a filing of the wrongful death, but I'd like to go just back to the jumping a little bit. Staying within the probate case, when the motion was brought and the court, the issue was brought to the attention of the court and Judge Fabiano on her own accord instituted a Supreme Court rule 137 proceedings. And she did that consolidating the probate court case and reassigning the case back to herself. And then let me, excuse me, let me interrupt a moment. With regards to that consolidation, and you've made the statement here as well as you do on page 13 of your brief, you indicated that those were consolidated, but in fact, they were consolidated for the limited purpose of addressing the 137 alleged violations and possible sanctions. For that purpose and that purpose only, correct? That was the stated purpose. Yes, Your Honor. But when the court did assign the sanctions in the probate case, the cases were still at the point of consolidation and the 137 sanctions were assigned against Jessica Wilson in the probate case for two separate actions. Each was the signing of the letters of administration, the affidavit of airship. Those two violations were the only violations that only Supreme Court 137 sanctions entered in the probate court case. No sanctions were entered against me in the probate case and were entered only against Ms. Wilson. Let me interrupt you again. Say in your brief at 14, sanctions were not entered separately between the probate case with the wrongful death, but the trial court awarded them collectively. That's your statement in the appellant's brief at page 14. Now, the record shows the memorandum of opinion was filed in both cases, but the order dismissing the wrongful death case and awarding attorney's fees was only entered in the wrongful death case. Isn't that accurate? That is accurate as to what the orders were signed, Your Honor. The orders were entered. The brief was, the memorandum was in both cases. But the order entered only in the wrongful death case that assessed fees against you and your client. Yes, Your Honor. I believe that was an error and inappropriate on the behalf of the defendants. They were asked to provide a order and the memorandum of opinion was to be included in that order. So the order on the memorandum of opinion is both cases. And then I believe a scratch order, I'm not certain, was then prepared by the defendants. So it was clear from the court's memorandum that that was part of the order. The fact that only the L case was then listed in the final order doesn't quite ring true when we see that not only was the memorandum, it also included orders to return the P case, the probate case, I'm sorry, back to the probate court and back to the other court. So I do believe that those orders were entered in both cases. Well, let's talk about ringing true then. Let's talk about that memorandum of opinion. Because your statement in your brief at page 20 is the trial court declined to consider any lesser sanctions stating it is glaringly evident that being caught in a lie cannot change behavior and compel compliance. The statement is arbitrary, inflammatory, and without cause. No evidence exists to support that. But when I look at that memorandum of opinion at supplement 671, it appears to me the court in no less than two pages first says the court has considered the significance of the untruth and determining anything short of dismissal with prejudice would be inadequate. And at the bottom of the page, the last sentence of the last paragraph, there is no question that the lie being advanced in this case was of great significance and a lesser sanction would be inadequate to remedy the prejudice to the defendants who has spent four years defending this case and unraveling Ms. Corl's and Ms. Wilson's lies. So how is it that you can reconcile that finding by the court with your statement that they did not consider those lesser sanctions? Um, given that, yes, that is what the memorandum of law stated. I'm sorry, the memorandum of decision. However, there had been no effort to consider any other sanctions. I think we need to look to the what is listed as the lie and what is listed as why the court believed that a lie was being advanced. Um, the courts, um, and I do understand and that this was, um, the court did consolidate, but they also, she also, I'm sorry, she also did break down the actual sanctions. Two of the lies and one of the two of what she stated were lies were in the probate case and what the, um, the pleadings that were filed and then the court corrected them and amended them, um, for that to rise to the level of conduct that would result in a, um, dismissal with prejudice and a $20,000 fine, um, we believe to be excessive. Going on to the court statement that the, are you conceding counsel that there were Supreme Court rule 137 violations and it's just a matter of the, the sanction that was imposed by the court. I am not, your honor, um, as to me, the, um, there were specifically two sanctions in the probate case against Ms. Wilson and one for signing an interrogatory in the, um, agree that the documents that I placed my signature on in the, um, the three, the, uh, complaint, the amended complaint, and then the second amended, uh, complaint that each one of those asserted that she was the, um, spouse by civil union. And they did ask for damages under a, the, um, consortium. Those statements are incorrect. Therefore, I did violate 137 in, in answering and filing those pleadings. It was not for the purposes that were later advanced or the, um, there became an assumption by the court that I had done these things in order that the only reason that I would have um, done those, uh, or written or signed those pleadings was so that, um, because I believe the court stated that, um, she made the conclusion that I believed that I, that the case would be worth more if there was in fact, if she was a spouse, as opposed to a fiance at no time ever. Is that anywhere in, in my pleadings, there was nothing that indicated that I, that even crossed my mind. Um, she also suggested in the decision that Don Horn, Matthew's mother, who is not a party to the case. And she suggested that Don was complicit and that, uh, the judge gave a specific, a specific suggestion for how she thought, uh, Ms. Horn could have, um, acted differently. Um, Don Horn, of course, is not a party. Her actions or inactions, um, do not have, should not have any influence. However, when we look back at that, I did sign those and yes, I did violate 137 in signing those. I do apologize. I, it is not an excuse for me to say that it, um, it did not take four years of unraveling, um, because the issues, uh, let me come back to signing the, the, um, third amended complaint and the third amended complaint. I did take the, um, consortium out. I did take in the plea for relief. I did take that out and I left a sentence in, um, in the common facts that I should not have left in. And that sentence indicated that she was, um, uh, suffered grief, um, and other damages and that she, uh, rightly deserved to be compensated for those. Councilor, I have a question. My question is this, um, the standard review, uh, for this court with regard to the trial court's findings on the rule 137 sanctions and the imposition of sanctions is to ask whether or not the trial court abuses its discretion. Now, in this particular panel, the appellate court has at least 25 years experience as trial judges. And we've been there. We understand that we understand just how much better the view is of what's going on in the court and people's behavior and attitudes to the trial judge. And then this court has on a cold record, uh, given all of that, uh, why should we conclude that the trial court abuses discretion here, which essentially means that no reasonable person confronted with what happened in the trial court in this case regarding the rule 137 issues could have first viewed the findings, the trial court did, and second could have imposed the sanctions the trial court did. How can we so conclude? Um, your honor, I would, of course, rely on the in that case as well, uh, that, um, the, the, um, was determined that there was an abuse of discretion in this case. Judge Fabiano says specifically in her ruling that, um, that she understands that usually it would be a dismissal or the, um, fines, but that would be very rare for it to be both. Now I've not been able to find a case where it was both. And I don't see, um, that my opponent has brought forward any, I believe that when we look at what had occurred in the case and the fact that from the very beginning, uh, Jessica Wilson said, I'm not the wife. I, this is not correct. Let me correct how I, what I said, um, it was done under oath trial court accepted it at that time in the probate court. She could have said, no, you can't be the administrator. These documents are not true. I'm going to stop this and sanction you right here. Um, but instead she let her go on. Um, we also, uh, there is a miscomprehension of actually the process and how it went on because the trial court was presented with the not, she was present, not presented the document that the, that were the orders in the probate case, the only orders in the probate case. That was not what the motion, um, defense motion was brought on. And when the trial court initiated the one 37 sanctions and began that process, we were still looking at, she still was looking at the pleading, not the, not what she corrected, not what she accepted, not what she assigned. Um, and that was true. In fact, even at the very last day, which is when the defendants finally said, that's correct. We did not have the right document. Um, actually they said clerk didn't give it to us. And then we went later and we got it. Um, but we didn't discover for quite some time until the plaintiff let us know that we were working with the wrong document. So all of this process, the court was at the very end. So throughout it, the court was looking at not the actual orders that were in place and the court was adding up or compiling the wrongdoing saying, Ms. Wilson signed this incorrectly, sign this incorrectly. Then there was a line there where we started looking at complaints. Um, of course, I'm sorry, was someone speaking? Oh, I'm sorry. I heard some, um, not to in any way absolve myself from the pleading and repleting, but when, um, but I will state the amended complaint. And as we were going through these versions of complaints, none of the complaints were focusing on the issue. And the time spent was not on the issue of unraveling. In fact, in 2019, the interrogatories that were received by the, um, were, um, served on us and were signed in those interrogatories in 2019, she stated, I am not the spouse. I'm the fiance. There was this marriage. It was on the bedside, at the bedside. And we're trying, we were trying to get the documents. That's what counsel had in 2019. And then came forward to say, we had no idea. Um, we never saw this document. She must've gone in and just lied to the court. That's not exactly, that's not what happened. Um, then when we look at this, the court was, um, very, uh, concerned and upset with what she believed when we first looked at it was that these were the two pages she came in, said, Hey, I'm the spouse by, by, um, uh, civil ceremony, got it signed and walked out. That's not what happened. Um, there was abs. I'm sorry. You're out of town, out of time. Are you going to finish that? Uh, thought? Uh, yes, your honor. Um, I would just ask that the court look at the actual documents that were addressed in, by the probate court and, and the fact that sanctions were on this Wilson for probate court only in an interrogatory sanctions for myself were for the pleadings in the wrongful death case. Thank you. Thank you all time and rebuttal drink wine. Thank you, your honor. May it please the court and good afternoon council. The appellees have the joint brief with the court's permission. I'll address plaintiff's first and third contentions and counsel for OSF healthcare system will address plaintiff's second contention. Plaintiff's first contention is that the circuit court erred in consolidating the probate case with the wrongful death case, and then erroneously imposed sanctions collectively in both cases, plaintiff advances, no cogent argument that the circuit court abused its discretion in consolidating the cases for the limited purposes of the Supreme court rule one 37 sanctions hearing section two 1,006 of the code of civil procedure clearly permits consolidation as an aid to convenience whenever it can be done without prejudice to a substantial right. Plaintiff's argument that the consolidation deprived decedent's errors of the substantial right to sue for wrongful death is entirely incorrect. The wrongful death case was dismissed with prejudice because of the false pleadings filed by plaintiff and her attorney. They knowingly misrepresented that plaintiff and decedent were married in an attempt to defraud the court and in furtherance of a scheme to increase the value of the wrongful death claims. To draw attention away from that fact plaintiff emphasizes rule 137 B's requirement that all proceedings under the rule shall be brought within the civil action in which the false pleading was filed. Plaintiff argues that because sanctions were imposed collectively in both cases in violation of rule 137 B the excessiveness of the sanctions cannot be evaluated properly because we don't know how much weight the circuit court gave to the false pleadings filed in the probate case in comparison to the false pleadings filed in the law case. That argument is completely meritless. There was only one supreme court rule 137 proceeding in this case. It was brought in the law case on the court's own motion on July 13, 2021. And because there was just the one rule 137 proceeding in the law case both types of sanctions were imposed only in the law case and not collectively. Obviously the sanction of dismissal with prejudice was imposed only in the law case. The probate case was not dismissed and the monetary sanctions were in consequence of defendant's attorney's fees petitions which were filed only in the law case. The trial court's order on May 5, 2022 imposing the monetary sanctions also was filed only in the law case and not in the probate case. Because there was just the one rule 137 proceeding in the law case and the sanctions were imposed only in the law case plaintiff's argument that rule 137 B was not adhered to is a non-starter. And her argument that the circuit court needed to assign weight to and apportion the sanctions according to the false pleadings filed in each case is not supported by authority and is without merit. All the pleadings contained the same misrepresentation and were part and parcel of the same attempt to defraud the court and increase the value of the wrongful death claims such that it would not have been possible to apportion the monetary cost assigned to each and every false pleading. It's also important to recognize that even if there was impropriety in consolidating the cases which there wasn't but just for purposes of discussion even if there was plaintiff still has to demonstrate prejudice to a substantial right in order to show that the trial court abused its discretion in consolidating the cases for the limited purpose of the 137 hearing. Her only attempt to do that is her baseless contention that the consolidation deprived decedent's heirs her mother and sisters of their substantial right to sue for wrongful death. But even assuming that the consolidation somehow deprived them of that right decedent's heirs were not prejudiced because they knowingly disavowed their claims to any proceeds that they could have recovered from the wrongful death claims. Plaintiff represented to circuit court that decedent's mother and two sisters knew they had a right to recover for wrongful death as the decedent's next of kin but that they agreed that the recovery should go to the plaintiff instead. Counsel made very clear on the record beginning on page 193 and ending on page 197 of the report of proceedings that this was the intent of decedent's mother and sisters. Ms. Horne during her testimony corroborated that representation when she was asked the following questions and gave the following answers. Question so Ms. Caroll has indicated that she's had conversations with you where you understood that you were the beneficiary or entitled to proceeds from any wrongful death case but you agreed to give it up to Jessica Wilson. Answer that is true yes that is true. Question so Ms. and that of the family that any money that would be recovered in this lawsuit would go to Jessica Wilson and Jessica Wilson's daughters and none to you. Answer yes. This is at pages 203 to 204 of the report of proceedings. Ms. Horne went even further however and she made clear during her testimony that if she had to replace the plaintiff as the executor of the estate and thereby become the plaintiff in the wrongful death case that plaintiff and her daughters would still get the money because that is what the decedent wanted. So it's clear that even if the consolidation was somehow improper there was no prejudice suffered by the decedent's heirs and plaintiff's first appellate contention must be rejected. Plaintiff's third appellate contention is that the circuit court exceeded the bounds of reason in imposing monetary sanctions for attorney's fees in addition to dismissing the wrongful death case with prejudice. This contention is forfeited because the extent of plaintiff's argument is that the trial court acknowledged that both types of sanctions are not usually ordered but then assessed both and therefore according to plaintiff exceeded the bounds of reason. But this is not a supreme court rule 341 h7 compliant argument because she doesn't explain with citation to pertinent authority why she believes the trial court exceeded the bounds of reason. Apart from the waiver the contention is meritless. There was no abuse of discretion because the circuit court set forth sound reasons for the additional monetary sanctions. In particular the two thousand dollars that plaintiff was ordered to pay was based on the circuit court's determination that a dismissal with prejudice imposed no sanction on the plaintiff herself because she was not the decedent's spouse and was not entitled to the eighteen thousand dollars that plaintiff's counsel was ordered to pay was based on her persistence in falsely pleading and and rather than acknowledging and correcting the false pleadings after defendants expended significant resources exposing the falsehoods. This was not an abuse of discretion because it cannot be said that no reasonable person would would agree with the circuit court's rationale. Plaintiff's arguments challenging the amount of the sanctions are also because she was given the opportunity but failed to file a response to defendant's fee petitions and never objected to the in-camera submission of the billing information. Nor did plaintiff take the position before the circuit court that it actually failed to conduct in-camera review of the submitted information or that it should have held an evidentiary hearing. Issues not raised before the circuit court are of course forfeited. These arguments are also counsel's affidavits made clear that the billing information submitted for in-camera review included the hourly rate, total hours billed, and tasks performed. Plaintiff's contention that the circuit court did not actually perform in-camera review is baseless. The circuit court specifically found that defendant's attorney's fees were reasonable and necessary, a finding the court could not have made without in-camera review of the billing information. In addition, contrary to plaintiff's contention, Illinois law does not require an evidentiary hearing on fee petitions as a matter of course. Our Supreme Court so held in Raintree Health Care Center, the Illinois Human Rights Commission, which is at 173 Hill Second 469 page 495. Instead, evidentiary hearings are required on attorney fee petitions only when a hearing is requested or where there is a factual issue that can only be resolved at an evidentiary hearing. In this case, plaintiff did not request an evidentiary hearing on defendant's fee petitions and she did not raise a factual issue that could only be resolved at an evidentiary hearing. So for those reasons, plaintiff's third appellate contention is forfeited, is also meritless, and must be rejected. Unless there's questions from the panel, I yield any time I have left. Very well, thank you counsel. Ms. Kaber? Good afternoon, may it please the court, I will argue as to the plaintiff's second contention on appeal on behalf of both the defendants today. That contention is that the trial court exceeded its authority by dismissing the case with prejudice, pursuant to Supreme Court Rule 137. In fact, as this court has also pointed out already today, it's well established that the standard of review for whether 137 sanctions should be imposed is abuse of discretion. Here, there was absolutely no abuse of discretion. The trial court properly granted the appropriate sanctions in the face of multiple violations of Rule 137 by both the plaintiff and her counsel over the course of a five-year period. And the trial court detailed the reasons for that decision in her order. As an aside, as pointed out by counsel on the third argument, plaintiff has forfeited her argument as to the second contention as she has cited no authority in support of her argument in violation of Rule 341H7. And therefore, my argument could in fact stop here as plaintiff has forfeited any argument on this second contention. However, I would like to address the Santiago factors that control in this case. A trial court may dismiss a case with prejudice as a sanction under Rule 137 as part of its inherent authority if two factors are met, and they very much are met here. The first one, if there's willful conduct showing deliberate and continuing disregard for the court's authority. Here, in no less than five pleadings, plaintiff's counsel fraudulently pled that the plaintiff was the spouse of the decedent. And in her brief, I don't think we even need to spend much time on that because both in this court and in her brief, plaintiff admits that she knew that she was not the spouse of the decedent at the time she made those pleadings as did plaintiff's counsel. These pleadings were repeated and 137 requires plaintiff's counsel to review each and every one of those pleadings. There's no excuse that it is a cut and paste method or that she just carried over old allegations. The fact is there's an obligation to look at each and every one of those pleadings as they are pled. Now in her argument, plaintiff's counsel stated that this third amended complaint somehow resolved or absolved her of all of these previous erroneous allegations. And that is just simply not the case. There was a motion to dismiss the loss of consortium claims because those in fact were absorbed within the wrongful death action. And that is what plaintiff was trying to ameliorate. However, it's not just one time that she pled she was the spouse of the decedent in a fraudulent manner. And that appears in paragraph four in which she pled she had been deprived of her husband's comfort, care, advice, society, support, and as such has the right to bring this action on her own behalf. And that is the key in this third amended complaint. She not only pleads it in complaint, she pleads it in the caption because she brings this case individually. She pleads it in the first sentence of the complaint because again, she brings it individually on her behalf and not on behalf of the estate. And she again, pleads it twice in each one of the counts, including in her prayer for damages in each of the counts that she is bringing this claim individually. And at that point, plaintiff's counsel should have reviewed that complaint and absolutely knew that those allegations were fraudulent. Yet she proceeded with that complaint. In addition, plaintiff's counsel, as well as plaintiff should have known that should have corrected that error from the very beginning rather than never. Once this error was pointed out in the defendant's motion to dismiss the third amended complaint, there was never a motion to remove the fraudulent allegation. Now I'd like to address plaintiff's counsel's discussion of the probate proceedings. She suggests that the court cured this issue in the probate proceedings. And in fact, that plaintiff did not make fraudulent allegations. And that's also simply not the case. In fact, plaintiff signed an affidavit of heirship stating she was the spouse of the decedent. She also signed the petition for letters of administration, as did plaintiff's counsel, stating that she was the spouse of the decedent. In her deposition, plaintiff testifies that she in fact knew she was not the spouse of the decedent or in a civil union with the decedent at the time of the probate proceedings. So whether the judge fixed those pleadings or not, it doesn't change the fact that they were false when they were first filed and that they violated Rule 137 when they were first filed. In addition, the very action of Judge Fabiano in fixing those pleadings and counseling the plaintiff that those pleadings were in error was the first strike against the plaintiff. Plaintiff's counsel would suggest there was no lesser sanction given. In fact, the court corrected the pleadings in the probate proceedings for the plaintiff. She fixed them and she advised the plaintiff that they were incorrect. That was the lesser action by the court advising the plaintiff that she had in fact filed a false pleading and the court sought to fix that problem back in 2016. Despite that, the plaintiff went ahead and filed an action in 2018 alleging in the affirmative again that she was the spouse of the decedent. Therefore, I think that there's no question here there was willful conduct showing deliberate and continuing disregard of the court's authority over a five-year period. As to the second factor, this is also met. There is no lesser sanction that would have been adequate here to remedy the harm to the judiciary and the prejudice to the opposing parties. I think here we really need to look at the purpose of Rule 137. Rule 137 is a gateway to judicial integrity. It assures that those individuals that sign pleadings are attesting that these pleadings are in fact grounded in fact. When we look at the course of conduct here which is egregious, which is a failure to take responsibility for fraudulent pleadings over a course of five years and a failure to then fix those pleadings when the plaintiff was made aware of the issue, we cannot say that a fine is enough. We have to look both at the facts of this case as well as general deterrence. If we're telling litigants you can just throw any facts up against a wall and hope that they stick. With the assurance that you'll only have to pay a fine if the court and the defendants find out after years of violations of Rule 137, then we are inviting violations. What the court did here is drew a line and said no. When you refuse to take responsibility and you refuse to admit that these pleadings have been filed over and over again with false allegations, you walk away with nothing and that is the appropriate sanction here. I would encourage the court to look at over the course of time from the time the defendants filed their motion to dismiss the third amended complaint until the order was entered over a year later on the Rule 137 sanctions. The fact that the plaintiff and her counsel continued to deny this conduct and failed to amend the complaint. When the plaintiff found out that there was this egregious violation, which frankly she knew all along, but when defendants pointed it out in a motion to dismiss, that allegation should have immediately been removed from the complaint and the plaintiff should have stopped alleging that she was entitled to damages on an individual basis and that did not occur. In fact, she continued and if you look at the argument from the motion to dismiss on June 10, 2021, which I invite the court to do, she continued to double down and plaintiff's counsel obfuscates, she deflects, she tries to blame the defendant, she tries to blame the plaintiff herself, and she fails to just answer the court's simple question, which was asked multiple times, did you know at the time you filed this complaint that the plaintiff was not in fact the spouse of the decedent? And that is the conduct that is repeated over and over again and that the court seeks to address here. It is also imperative to look at the testimony of Dawn Horn, which plaintiff's counsel is again attempting to minimize. Dawn Horn is the decedent's mother. She may have been the administrator of the estate if not for the plaintiff and she testifies that she is complicit in this entire fraudulent scheme, that she also knew that the plaintiff was not the spouse of the decedent and she knew that the plaintiff was bringing an action as the spouse of the decedent and that further solidified the sanction that was adequate here that only dismissal would meet the level of egregiousness of conduct in this case. The trial court properly found that the Santiago factors were met in this case and thoroughly outlined her basis for that decision. The test here again is not whether this court or you justices would grant the same sanctions. The test is whether no reasonable person would agree to the sanctions granted by the trial court and these sanctions are well within reasonable limits given the level of continued deception over a five-year period by the plaintiff and her counsel with the knowledge of the mother of the decedent and a reasonable person could easily find dismissal with prejudice was an appropriate remedy and necessary to address the prejudice to the defendants and the harm to the judiciary and having to root out and identify this fraud. Thank you counsel. You're out of time. Thank you. It looks like you timed it just right. Rebuttal. Yes sir. And I'm just going to hit a couple of things very quickly. When we look at the issue of the lesser sanction and counsel did state that she believed the lesser sanction was when she advised Ms. Wilson that that she did not have that the marriage was not recognized because she did not have the appropriate certificates and then she invited her to bring those back and would indicated she would amend at that time. If that if counsel believes that that is one measure that the court used that would be in order as a lesser sanction and if that is characterized as that that was the only would be the only measure. There was nothing else that was done. The court asked about the in fact we should rely on the defendant's motion where the defendant asked to dismiss the case and to prohibit Dawn Horn from stepping into the shoes of the executor. Dawn was not a party. There was no reason or any suggestion that she should come in and but that was the suggestion the court could have as a lesser sanction done several things. If Dawn Horn if they did not believe that Ms. Horn should step in as an executor then either of the sisters could. They could have she could have barred Ms. Wilson from participating in the case from testifying or from asking for any damages or even providing she would have been the witness to provide the most information from the bedside about pain and suffering. That they should could have barred that testimony. As to the suggestions that I'm sorry I get my notes out of order here just trying to catch up with everything. Yes the pleadings did state that she was a spouse however to for the court to court ordered or stated that these sanctions of dismissal with prejudice and twenty thousand dollars were because there was because of the actions were so grievous so fundamentally belligerent to the court basically and that they were not. The when the the when when Judge Fabiano corrected the situation in the probate court and then when she brought came back into the L case we did ask that she not be able to conduct the hearing or that she not not participate in the probate case because of what her because we believe that she had actually mitigated and taken care of that issue. Those were all denied as far as as we know 137 is not to be punitive in nature and when Judge Fabiano issued the sanctions she said specifically that for the conduct of the plaintiff that she that is that the plaintiff was not going to feel this and that she in order to have her feel the impact of it she was going to sign two thousand dollars in attorney's fees against her so this wasn't an issue of I mean that was her actions were entirely punitive when she indicates I want to make Jesse Wilson feel the impact of coming to the court with pleadings that were signed that were wrong and then correcting those. The counsel did you is there anywhere in the record where you objected to the in-camera review? No I did not I asked for a hearing I asked for the in-camera review that would be so is so far afield we don't even know I had I had spoken asked about having a hearing the defendants were opposed to any hearing on the on the on the fees whatsoever at all and you not may have noticed although they stated that there were but these were two separate cases and decisions were made separate their brief is actually the reply has actually been filed in both cases in the consolidated cases we filed ours in the wrongful death case they have not they keep saying well the judge only ordered this in the L case well when they went back five years ago and gathered the order what they thought was the order and then went back another time and got the orders the correct documents or when they reviewed the 2019 interrogatories that said she's not the wife she's not you know there was she was the fiancee etc where did they bill those were those all billed in the L case I have no idea now the court did they did provide billing for approximately $30,000 each and the court said I'm going to give you $10,000 each so there wasn't even really a how was that broken out what were the fees for what they were they applied to there's just no no sense of that at all let me interrupt you there Justice Leonard has your question been answered and yes thank you is there any further questions okay counsel you are out of time the court will take this matter under advisement and we will now stand in recess